PETER LONGHINE, Plaintiff, *v.* WILLIAM BILSON, as President, and HOWARD WILSON, as Treasurer, of the Employees Benefit Association of the Defiance Paper Company and the Niagara Wall Paper Company and the Pittsburgh Wall Paper Company of New Brighton, Pennsylvania, an Unincorporated Association of More than Seven Persons, Defendants.

Supreme Court, Niagara County, April 21, 1936.

*Hunt & Giles [Francis Giles* of counsel], for the plaintiff.

*Dudley, Gray, Phelps & Gray [Alpheus R. Phelps* and *Salem G. Mansour* of counsel], for the defendants.

HARRIS, J. This action is one brought in equity by the plaintiff in his own behalf and on behalf of such other members of the defendant association who shall be similarly situated as the plaintiff and desire to avail themselves of the benefit of such action.

The plaintiff herein has been a member of the Employees Benefit Association of the Defiance Paper Company and the Niagara Wall Paper Company and the Pittsburgh Wall Paper Company of New Brighton, Pa. Such association and its officers who are sued as above are hereinafter referred to as the defendant association. The defendant association is, and throughout its existence has been, unincorporated.

Originally, when the defendant association was formed, the Defiance Paper Company had two mills, one of which was known as Mill No. 1, and the other as Pettibone Mill No. 3. The Defiance Paper Company, the Niagara Wall Paper Company and the Pittsburgh Wall Paper Company were all manufacturers of wall paper.

These three employing companies, although separately incorporated, were substantially controlled by the same group. As conditions and methods changed in the manufacture of wall paper and the sale and distribution thereof, the necessity for continuing mills operated by the separate companies has ceased, and there now remains in active operation only the Niagara Wall Paper Company.

The defendant association was organized at about the year 1920. Throughout the history of the mills and of the association all except one of the employees of the employing companies became members of the defendant association. In general the objects of the defendant association were to provide the payment of sick and similar benefits to the employees of the three employing companies who were members of the association. The plaintiff now claims that the objects of the defendant association have been accomplished and that the association should be dissolved and the funds in its treasury, which amount to $12,000 or more, be distributed among the individual members of the association. The defendant contends that the objects of the association have not been attained and that, therefore, the association should not be dissolved and that due to certain provisions of the by-laws of the defendant association the plaintiff and those similarly situated to him have ceased to have any interest in the association and its funds.

At the inception of the defendant association it had a membership of 465 members. At the time of the closing of Pettibone Mill No. 3, which was prior to 1932, there were 525 members. The Pittsburgh Wall Paper Company mill closed in 1932, and at the time of its closing the association had 328 members. In September, 1935, when the association had 423 members, of whom 126 were employed by the Defiance Paper Company and 197 were employed by the Niagara Wall Paper Company, the Defiance Paper Company notified its employees that it was going to discontinue business. Its plant was shut down, although its corporate existence was kept intact. The reason for the discontinuance of business by the Defiance Paper Company was that there had ceased to be a market for its product which would be profitable enough for those financially interested in the Niagara Wall Paper Company and the Defiance Paper Company to continue the manufacture of its product by the Defiance Paper Company. This reduction of business came about partly through the ability of Niagara Wall Paper Company to purchase wall paper cheaper than it could manufacture through its associate, the Defiance Paper Company,

and partly through the machinery of the Defiance Paper Company becoming out of date and out of repair. When the employees of the Defiance Paper Company received notice that their employer was about to discontinue its business, some 135 of the employees of the Defiance Paper Company who were at the time members of the defendant association petitioned the officers of the defendant association for its dissolution and an accounting and distribution of the assets of the association. Such request met with non-compliance, and this action has been brought seeking such dissolution and distribution of assets of the defendant association. When Pettibone Mill No. 3 closed down and when the Pittsburgh Wall Paper Company ceased to produce, a considerable number of the employees of the closed mills were taken into those mills of the employers above mentioned which remained in operation. Although some were not so re-employed, none of such employees then sought the dissolution of the defendant association or a distribution of its assets. The defendant association contends that this is a precedent which is binding on the plaintiff and those whom he represents, but the opinion of this court is that the situation in regard to the loss of employment by the plaintiff and his associates is different than the situation which existed at the time of the closing of Pettibone Mill No. 3 and at the time that the Pittsburgh Wall Paper Company discontinued operations. Then apparently there still was room in the trade and in the other mills for the employees of those mills which were closed, and even though this were not so, the fact that others had waived rights would not be controlling on such members of the defendant association who desire to assert such rights as may exist for them in the assets of the defendant association.

This court is not in agreement with the plaintiff in his contention that the objects of the association have ceased, because the Niagara Wall Paper Company is still in operation and includes among its employees the larger part of the present membership of the defendant association. So the plaintiff is not entitled to a decree dissolving the defendant association and the distribution of its assets on such a dissolution.

However, there remains a question as to whether the plaintiff and those associated with him or others similarly situated to him among the members who were former employees of Defiance Paper Company have an interest in the assets of the association. Such former employees of Defiance Paper Company contend that they are entitled to a share in such assets. The defendant association claims that the members of the association who have lost employment through the closing of the operations of Defiance

Paper Company lost any interest in the assets of the association, and base such contention on section 5 of article III of the rules and regulations (by-laws) of the defendant association. Such section, in so far as it is pertinent to this lawsuit, reads as follows:

"Section 5. Membership shall cease when a member leaves the employ of said companies, either voluntarily or involuntarily * * * Such person shall immediately cease to receive benefits from the Association and shall forfeit all rights to any benefits or moneys paid to the Association."

On the construction by this court of such section of the rules and regulations depends whether the plaintiff or the defendant succeed in reference to this last named contention of the plaintiff that he and those similarly interested as he are entitled to a portion of the assets of the defendant association. This court is of the opinion that the section of the rules and regulations hereinabove quoted was intended simply to cover the case of individual members who left the employ of the companies either voluntarily or involuntarily while such company continued in production and in the employment of help. In the case at bar a substantial number of the members of the defendant association have lost employment *en masse* for reasons beyond their control, through the discontinuance of operations of the Defiance Paper Company, and under such circumstances of production and market which indicate that the Defiance Paper Company is not expected to resume production. The court is of the opinion that when the defendant association came into being it was not within the contemplation of the members in adopting section 5 of article III of the rules and regulations that the mass discharge of all employees through the closing down and taking out of production of the mills of an employing company was such a leaving of employment as is described in that portion of section 5 above quoted. In view of this, the court decides that the plaintiff and such other members of the defendant association as are similarly situated as he is, are entitled to a decree providing that the assets of the defendant association be divided (after payment of the obligations of the defendant association) between the defendant association for the benefit of those who continue in the employ of Niagara Wall Paper Company and the members who have lost employment through the closing down of operations by the Defiance Paper Company. The formula which should be followed in the division and distribution of such assets is to be as follows: Against the assets of the defendant association as of September 17, 1935, there is to be charged the liabilities of the defendant association as of that date. This will leave the amount of the net assets of the

defendant association. Then the interest of each member of the defendant association in such net assets should be ascertained by determining how much he has contributed to the association and crediting to him a sum proportionate to his contribution as such contribution compares to the entire amount of contributions of all those who hold membership as of September 17, 1935. The proportionate part of the assets which under such computation represents the share of those remaining in the employ of the Niagara Wall Paper Company in such assets is to remain in the treasury of the defendant association. Such proportion as represents the interest of each member who has lost employment through the closing of Defiance Paper Company shall be credited to his personal account and be distributed to him, providing that within three months after the entry of an interlocutory decree in accordance with the provisions of the above such member serves notice in writing on the attorneys for the defendant association herein that he desires such amount of money to be paid to him. The amount of money which is so credited to any member, if the same is not claimed by such individual member in accordance with the above, shall be added to the assets remaining to the defendant association and be the property of the defendant association.

The enforcement of the interlocutory decree hereinbefore referred to may require a reference to ascertain and determine the computations, and for that purpose the matter is referred to the Hon. Clinton T. Horton, official referee, to take proof.

The interlocutory decree may provide that the final decree herein may be applied for on ten days' notice on behalf of one party herein to the other party herein, providing such notice is served not less than four months after the entry of the interlocutory decree herein.